VYTAUTAS J. ARLAUSKAS, APPELLEE, v. WESTERN ELECTRIC COMPANY, APPELLANT.

145 N. W. 2d 925

Filed October 28, 1966. No. 36342.

Fraser, Stryker, Marshall & Veach, for appellant.

Sodoro & Meares, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and C. THOMAS WHITE, District Judge.

SMITH, J.

The issue in this workmen's compensation case is whether plaintiff was permanently disabled because of a cardiac arrest and organic heart disease. The right to compensation is unquestioned otherwise. A single judge of the compensation court denied the claim, but on direct appeal the district court found a permanent partial disability. The employer company has appealed.

Plaintiff, who was 30 years of age, had no history of heart disease. He sustained the cardiac arrest April 9, 1963, minutes after he had ingested a penicillin tablet under supervision of a company nurse. A short time passed before Dr. Tranisi, a company physician, arrived. Plaintiff looked like a man in severe shock with profuse diaphoresis. Pulse and blood pressure were imperceptible. Responding to emergency treatment, plaintiff described the onset. After a sensation of itching and swelling all over, he had suffered from shortness of breath, vomiting, and severe epigastric cramps.

Abnormalities were present subsequent to the emergency treatment. Plaintiff could distinguish only gross objects and light, and his right eye appeared to be deviated externally. Pulse was perceptible but quite rapid. Blood pressure of 60/40 was first ascertained in 10 or 15 minutes. Plaintiff felt cold inside, and he soon developed intermittent muscular contractions typical of a severe chill.

Plaintiff was hospitalized April 9 to 12, 1963, under the care of Dr. Tranisi in consultation with Dr. Fangman, an internist. At the time of admission plaintiff had a blood pressure of 112/74 and a pulse of good quality. Dr. Tranisi recorded this impression: "Anaphylactic type reaction, etiology indefinite, possibly secondary to ingestion penicillin tablet." Plaintiff resumed handling storeroom materials for the company on April 22, 1963, but he was restricted by the doctors to light manual labor until June 11, 1963.

Plaintiff quit his job November 1, 1963, for unrelated reasons. He was employed by Swift and Company from November 1963, to February 1965, at manual labor which was not quite so hard as his former work. An employment questionnaire shows that he denied having heart disease. Yet in testimony and statements to doctors he complained of suffering weekly from shortness of breath and chest pain. He also testified to a misunderstanding of the question.

The medical opinions, together with supporting data, are contained in written reports. Dr. Fangman in June 1964, referred to plaintiff's complaints, and then said: "I would not eliminate the possibility of a cardiac neurosis with anxiety state. Any absolute statement regarding the absence of organic disease at this moment is going to require more intensive diagnostic evaluation * * *." He concluded in July 1964, that plaintiff was not disabled permanently. The doctor noted minor electrocardiographic changes April 10, 11, and 12, 1963, and in May 1964, but he found the cardiogram within normal limits.

Dr. Hartigan, an internist, made an examination in June 1964, at the request of plaintiff's attorney. Plaintiff, besides reiterating his complaints, mentioned a hospitalization of several weeks and a doctor's disclosure of damage to the heart muscle. The heart on examination had regular rhythm, strong tones, and no murmur. An electrocardiogram demonstrated some inversion of the

T waves in the 4th, 5th, and 6th precordial leads, but it otherwise was not remarkable. A double two step test showed an increase in rate, no other abnormal change, and no coronary insufficiency at the time. Dr. Hartigan found a permanent disability of 10 per cent, but he also said:

"It is my impression that this man suffered an acute allergic reaction. From his history apparently there was some myocardial injury at that time. There were only minimal residual findings of this present on his cardiogram at this time. * * * I would assume from his story that he had suffered myocardial damage from which he has recovered well. He states that his exercise tolerance is not up to what it was before. This could be the result of his myocardial injury plus the enforced inactivity. I think he has made a good recovery. I would suspect that his long-term prognosis is good."

Counsel says that we should disregard the opinion of Dr. Hartigan because plaintiff misrepresented damage to the heart muscle and the length of hospitalization. Accuracy was not essential. The representation of damage was not misleading, for the Chief, Benefit and Employee Service Section, had written in May 1963: "1. Is there permanent damage to his heart? 2. If so, is it related to the penicillin reaction? * * * Question number one has been deferred for the present. While the EKG's taken do indicate non-specific changes, our Medical Department cannot say at this time whether or not this is of a permanent or transient nature. In regard to question number two, whether the condition is permanent or not, it is our Medical Department's opinion that the severe reaction likely was due to the ingestion of a penicillin tablet in the absence of any other precipitating factor."

A company doctor said in a memorandum of April 13, 1964: "The electrocardiogram changes previously reported do not necessarily constitute actual damage as the result of this episode. These changes may have

been present prior to the episode and certainly are not indicative of any permanent residual damage arising from a specific incident."

On de novo review we are influenced by the prior negative history, the severity of the penicillin reaction, the complaints of weekly chest pain and shortness of breath, the opportunity of the district court to observe the demeanor of plaintiff, and the opinion by Dr. Hartigan. We have considered those facts operating against an award, but we conclude that the judgment is correct.

A fee of $350 is allowed to plaintiff for services rendered by his attorney in this court.

AFFIRMED.